THE STATE OF OHIO, APPELLEE, *v.* SMITH, APPELLANT.

(No. 82AP-833—Decided June 9, 1983.)

*Mr. Michael Miller*, prosecuting attorney, and *Ms. Karen L. Martin,* for appellee.

*Mr. Francisco A. Garabis,* for appellant.

McCORMAC, J. Defendant, Rosa L. Smith, has appealed her conviction, by a jury, of murder, asserting the following assignments of error:

"I.  A defendant is deprived of her right to due process of law guaranteed by Article I, Sections 10 and 16 of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution when a trial court erroneously excludes evidence, in a murder prosecution, of decedent's character showing that he was a violent person which was attempted to be introduced for the purpose of establishing self-defense, while the court imposes the burden of establishing self-defense upon the defendant.

"II.  A court commits reversible error when it excludes character evidence of a decedent's trait of character relevant to self-defense as allowed by Rule 405, Ohio Rules of Evidence.

"III.  The Court of Common Pleas committed reversible error in overruling defendant's Motion for Acquittal.

"IV.  The finding by the jury that the defendant was guilty as charged of murder is against the manifest weight of the evidence.

"V.  The closing argument of a prosecutor that includes testimony by the prosecutor and an expression of his opinion as to the guilt of the defendant violates a defendant's right to a fair trial and due process of law as guaranteed by the Ohio and United States Constitutions."

Defendant admittedly shot and killed Hammond Russell, Jr., a man with whom she had once lived and with whom she was well-acquainted.  According to defendant's testimony, she did not intend to kill Russell, but only to frighten him into leaving her premises, and that she shot him in self-defense while in fear of her life.

The state's theory was that defendant murdered Russell because she was angry with him.

There was sufficient evidence presented by the state to present a jury question of murder.

To be guilty of murder, the defendant must purposely have caused the death of the deceased. R.C. 2903.02. A person acts purposely when it is her specific intention to cause a certain result. R.C. 2901.22(A). While defendant testified that she did not intend to cause the death of Russell but that she just shot in his direction to scare him, that self-serving statement is not binding upon the jury whose function it is to judge the credibility of a witness. From the facts of the death, the jury may reasonably have inferred a specific intent to kill. Her intent was a question of fact to be inferred from the surrounding circumstances and the state was entitled to all favorable inferences that might be drawn from the facts proved. *State* v.

*Wallen* (1969), 21 Ohio App. 2d 27 [50 O.O.2d 50]. Defendant's actions in leaving the scene after the shooting while Russell was in a stricken state may properly have been considered by the jury in determining whether there was an intent to kill. *State* v. *Austin* (1976), 52 Ohio App. 2d 59 [6 O.O.3d 43]. An intent to kill may be presumed where the natural and probable consequences of a wrongful act are to produce death by use of a deadly weapon. *State* v. *Robinson* (1954), 161 Ohio St. 213 [53 O.O. 96]. Hence, there was a jury issue of whether defendant acted purposely in shooting and killing Russell.

Defendant further contends that there was insufficient evidence to reject defendant's affirmative defense of self-defense and that defendant's motion for judgment of acquittal should have been sustained for this reason.

Defendant testified that she was afraid that Russell was going to kill or badly hurt her and that she shot him for that reason. The state asserts that there was physical evidence and circumstances contrary to that self-serving statement which created a jury issue of whether defendant acted reasonably in using deadly force.

The physical evidence showed that the only blood found in the residence was around the victim near the front door, including a smear of blood on the door itself. The bullet hit the left side of the victim and traveled horizontally through his body from left to right. There were no powder marks on Russell's clothing, indicating almost conclusively that the gun was discharged at a distance of at least two feet away from the victim. Defendant testified that Russell lunged at her over a table in an effort to grab for the gun, which she was holding in her left hand. Arguably, it appeared unlikely that the wound could have been to the deceased's left side since he probably would have had to turn away from defendant to expose his left side to her. Defendant's testimony as to where she was standing when she fired the shot was inconsistent with what she related in a statement to the police and arguably contrary to the position of a bullet hole in the ceiling, which appeared to have been caused by a shot fired from a different location.

There was also evidence from which the jury could have concluded that defendant did not act reasonably in using deadly force. There were no signs of a struggle in the house and no weapon was found in the living room or around Russell. The primary testimony of defendant about Russell's actions giving rise to her use of deadly force were verbal threats.

Considering all of these factors, a jury question was presented as to whether defendant had maintained her burden of proving self-defense by a preponderance of the evidence, as is required by R.C. 2901.05(A).

Defendant's third and fourth assignments of error are overruled.

In her first and second assignments of error, defendant contends that the trial court erroneously excluded admissible evidence pertaining to the establishment of self-defense.

The primary issue was self-defense. To establish self-defense, defendant had the burden by the preponderance of the evidence of showing that she had a bona fide belief that she was in imminent danger of death or great bodily harm. *State* v. *Robbins* (1979), 58 Ohio St. 2d 74 [12 O.O.3d 84]. The trial court permitted defendant to testify to the victim's general reputation in the community as a violent and aggressive person. He also permitted her to testify that the deceased had hit her in the mouth previously and that he carried a knife. The trial court excluded other evidence that defendant proffered to prove that she believed that she was in danger of great bodily harm when she shot Russell. Her proffered testimony was that Russell had told her that he had killed a man, that she had witnessed Russell's unprovoked attack

upon a person with a knife, and that she had seen Russell push a man through a wall. She also proffered testimony that she had been told that Russell had shot another person through the throat.

While some testimony of the deceased's character for violence and aggression was placed before the jury, the proffered testimony of defendant's knowledge of the deceased's propensity for violence, which was excluded from the jury, was much more compelling than that admitted and cannot be disregarded as cumulative.

The character of the deceased for violence and aggression as known by the defendant has a direct bearing upon the right of self-defense. *McGaw* v. *State* (1931), 123 Ohio St. 196. Since the defendant's state of mind is crucial, it is important that defendant be able to relate her reasons for feeling as she did. In *McGaw,* the Ohio Supreme Court held that the defendant had a right to present the testimony of witnesses that had informed defendant prior to the shooting of the dangerous character of his assailant. In *State* v. *Thomas* (1981), 66 Ohio St. 2d 518, at 520 [20 O.O.3d 424], the Supreme Court stated as follows:

"In a trial such as this one, where the evidence raises an issue of self-defense, the only admissible evidence pertaining to that defense is evidence which establishes that defendant had a bona-fide belief she was in imminent danger of death or great bodily harm, and that the only means of escape from such danger was through the use of deadly force. * * *"

The deceased's admission to defendant that he had killed a person, her personal knowledge of violent attacks by the deceased upon others, and her knowledge through hearsay that the deceased had committed an unprovoked act of violence upon another, were all evidence relevant to defendant's belief that she was in imminent danger of death or great bodily harm and were admissible to prove her state of mind.

Evid. R. 404(A)(2) provides as follows:

"(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused * * * is admissible; * * *."

Evid. R. 405, pertaining to methods of proving character, provides, as pertinent, as follows:

"(B) Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of a * * * defense, proof may also be made of specific instances of his conduct."

The trial court erred in restricting defendant from proving specific instances of violent conduct on the part of the deceased, other than acts of violence against defendant, as the deceased's character for violence was an essential element of self-defense.

The trial court did not err in excluding proffered testimony to substantiate her statement that Russell had told her that he had killed a man. The proffered testimony was a statement by a police detective that a man with a name similar to the name given her by the deceased had been killed and that Russell was a "prime suspect." This evidence was properly excludable because the issue was not whether the statement was true, but whether Russell had told defendant that he had killed a man and whether she believed it, thus causing her to be in fear of deadly harm from the deceased. To go further would divert the jury from the real issue to a collateral matter. See Evid. R. 403(A).

The state asserts that, if there was error, it was harmless. That contention is not well-taken. Defendant was prohibited from presenting her most forceful testimony, indicating that the deceased was likely to carry out his verbal threats of stomping her to death or causing her severe bodily harm. There was substantial evidence otherwise of self-defense and the excluded evidence may well have altered the result.

Defendant's first and second assignments of error are sustained.

Defendant finally asserts that the closing argument of the prosecutor was grossly improper and caused defendant to be denied a fair trial and due process of law.

There was only one objection by defense counsel to the closing argument, which occurred when the prosecutor started to express an opinion. Following a bench conference, which was not recorded, the prosecutor referred only to the evidence. There were no other objections nor does the argument appear to exceed the bounds of propriety, at least to the extent that there was plain error. The jury was instructed on three occasions that closing arguments were not evidence. The argument appeared to be the prosecutor's view of the evidence rather than his personal opinion, even though on several instances he added the words "I think."

Defendant's fifth assignment of error is overruled.

Defendant's first and second assignments of error are sustained, and defendant's third, fourth and fifth assignments of error are overruled. The judgment of the trial court is reversed. The case is remanded to the trial court for a new trial consistent with this opinion.

*Judgment reversed and case remanded.*

STRAUSBAUGH and MOYER, JJ., concur.