OPINION
{¶ 1} Defendant-appellant Antron Davis appeals from his convictions and sentence for murder, felonious assault, and having a weapon under disability. He contends that the trial court erred by declining to instruct the jury on self-defense and on *Page 2 
voluntary manslaughter. He further claims that the convictions are not supported by the evidence.
 {¶ 2} We conclude that the trial court did not abuse its discretion when it declined to give self-defense and voluntary manslaughter instructions. Furthermore, our review of the record leads us to conclude that the judgment is not against the manifest weight of the evidence.
 {¶ 3} Accordingly, the judgment of the trial court is affirmed.
 I {¶ 4} This case arises from a multiple shooting that occurred outside the Majestic nightclub located in Dayton. The shooting involved three victims. Two of the victims, Kenneth Robinson and Naamon Johnson, died as a result of their injuries. The third victim, Keyanday Marvin, suffered injuries to his abdomen, arm and leg.
 {¶ 5} On July 18, 2004, Robinson and Marvin arrived at the Majestic to celebrate Robinson's birthday. Marvin was denied admission to the club due to the fact that he had been involved in a fight there the week before. Later that night, Robinson was involved in a fight inside the club. Security intervened, and all the fight participants were escorted outside. Johnson, who was the club manager, then shut the club down for the night. However, the fight continued outside the club.
 {¶ 6} At some point, people called Marvin at his home to tell him that Robinson was involved in a fight. Marvin immediately went back to the Majestic. Upon arriving there, he encountered Robinson and the two got into Marvin's car. They proceeded to *Page 3 
drive up an adjacent alley looking for the men who had been involved in the fight.
 {¶ 7} In the meantime, Johnson and Davis were standing in the open doorway of Davis's car, having a conversation. Marvin and Robinson then returned to the club. Marvin thought that Davis was one of the men who had fought Robinson. Thus, Marvin exited his car, and ran up and punched Davis. Davis staggered back into his car. When he emerged from his car, he had a gun in his hand.
 {¶ 8} At that point, a gunshot was heard. Johnson then backed up a few feet and fell to the ground. Davis then pointed the gun at Marvin and Robinson, said "F you niggers," and began to shoot. Both Robinson and Marvin fell to the ground. Davis approached them and fired two more shots into each of them. Johnson was pronounced dead at the scene. Robinson died ten days later while in the hospital. Marvin had a plate placed in his right arm and a rod in his left leg.
 {¶ 9} Davis was indicted on one count of Murder, with a firearm specification, for the death of Naamon Johnson. He was also indicted on two counts of Murder, with firearm specifications, for the death of Kenneth Robinson. The grand jury indicted Davis on two counts of Felonious Assault, with firearm specifications, for the shooting of Keyanday Marvin. Finally, he was indicted on two counts of Having a Weapon Under Disability.
 {¶ 10} The Murder and Felonious Assault charges were tried to a jury in September, 2006. The counts for Having a Weapon Under Disability were tried to the bench the following month. Following trial, the jury found Davis guilty of the lesser-included offense of Reckless Homicide for the death of Naamon Johnson. The jury *Page 4 
further found Davis guilty of both counts of Murder with regard to Kenneth Robinson, and guilty of both charges of Felonious Assault. The trial court subsequently found Davis guilty of both counts of Having a Weapon Under Disability. The trial court sentenced Davis to a total prison term of twenty-eight years to life. From his conviction and sentence, Davis appeals. II {¶ 11} Davis's First Assignment of Error states as follows:
 {¶ 12} "THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT ON THE AFFIRMATIVE DEFENSE OF SELF DEFENSE FOR BOTH COUNTS OF MURDER RE KENNETH ROBINSON AND THE FELONIOUS ASSAULT COUNTS AGAINST KEYANDAY MARVIN."
 {¶ 13} Davis contends that the trial court abused its discretion by failing to instruct the jury on the defense of self-defense. In support, he contends that the evidence demonstrates that he did not create the situation giving rise to the shooting. He argues that Robinson, who was "drunk and in a rage," tried to assault him by attempting to run him down with Marvin's car. He further argues that Robinson was openly carrying a gun. Davis further argues that Marvin, who had a reputation for fighting, assaulted him by punching him.
 {¶ 14} Self-defense is an affirmative defense. State v. Williford
(1990), 49 Ohio St. 3d 247, 249. The burden of proving self-defense by a preponderance of the evidence is upon the accused. R.C. 2901.05(A);State v. Jackson (1986), *Page 5 22 Ohio St.3d 281. In order to establish self-defense, a defendant must prove: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger. State v. Robbins (1979), 58 Ohio St.2d 74. A trial court's decision whether to give a jury instruction will be reversed only upon a showing of an abuse of discretion. Jaworowski v. Med. RadiationConsultants (1991), 71 Ohio App.3d 320, 327-28. An abuse of discretion occurs when the trial court's decision is "arbitrary, unreasonable, or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St. 3d 217, 219.
 {¶ 15} From our review of the transcript, we conclude that the trial court did not abuse its discretion by denying the requested instructions. First, the evidence indicates that Davis did not attempt to retreat from any danger. The evidence demonstrates that he had easy access to his vehicle, and that he actually was partially in his car at the time he turned around and started shooting. Second, the evidence also demonstrates that after the initial shots knocked Marvin and Robinson to the ground, Davis walked up to them and continued to shoot them multiple times. Based upon the record, we conclude that Davis violated his duty to retreat from the danger. We further conclude that the fact that Davis walked up to the victims after they were already on the ground, and continued to shoot them, belies his claim that he was in reasonable fear of imminent danger.
 {¶ 16} Davis's First Assignment of Error is overruled. *Page 6 
 III {¶ 17} Davis's Second Assignment of Error is as follows:
 {¶ 18} "THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT ON VOLUNTARY MANSLAUGHTER RE ROBINSON; AND APPELLANT'S COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST AN INSTRUCTION FOR AGGRAVATED ASSAULT RE MARVIN."
 {¶ 19} Davis claims that he was entitled to an instruction for Aggravated Assault, as a lesser-included offense of Felonious Assault, with regard to his shooting Marvin, and that trial counsel was ineffective for failing to request such an instruction. He further contends that he was entitled to an instruction on Voluntary Manslaughter, as a lesser-included offense of Murder, with regard to Robinson's death.
 {¶ 20} On Davis's claim that his trial counsel was ineffective for failing to request an instruction for Aggravated Assault, we agree with the State that the record reflects that his trial counsel did request an instruction on Aggravated Assault, and the trial court gave that instruction. Therefore, this claim of error is not portrayed in the record.
 {¶ 21} We next turn to the claim that the trial court should have given an instruction on Voluntary Manslaughter with regard to the Robinson Murder counts. Voluntary Manslaughter is an inferior degree of Murder. State v. Shane (1992), 63 Ohio St. 3d 630, 632. A defendant on trial for Murder "is entitled to an instruction on voluntary manslaughter when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." Id. Voluntary Manslaughter is defined in R.C. 2903.03 as follows: *Page 7 
 {¶ 22} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person in to using deadly force, shall knowingly cause the death of another * * *."
 {¶ 23} Thus, unlike Murder, Voluntary Manslaughter includes the mitigating element of serious provocation by the victim reasonably sufficient to incite the defendant into using deadly force. State v.Thomas (January 10, 2003), Montgomery App. No. 19131, 2003-Ohio-42. In deciding whether there was sufficient provocation, an objective standard is first applied to determine whether the provocation was reasonably sufficient to bring on a sudden passion or fit of rage. Id. The provocation must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. Shane, supra. If that standard is met, then a subjective standard is applied: whether the particular defendant, given his emotional and mental state and the circumstances that surrounded him at the time of the act, was under the influence of a sudden passion or in a sudden fit of rage. Id.
 {¶ 24} Davis contends that Robinson's actions that night constituted provocation sufficient to warrant a Voluntary Manslaughter instruction. Specifically, he notes that at one point, Robinson tried to hit him while operating Marvin's car. He also claims that Robinson was approaching with a gun at the time that Davis was punched by Marvin.
 {¶ 25} A review of the record does not support a finding that Robinson had a gun at the time of the shooting. Therefore, this allegation cannot form the basis for giving the requested instruction. *Page 8 
 {¶ 26} The record does, however, support a finding that Robinson attempted to hit Davis with Marvin's car. However, the evidence in the record also shows that Robinson failed to hit Davis, Davis having moved out of the way of the vehicle. The evidence further shows that Robinson then left the scene for a period of time. There is no evidence that Robinson made any other attempts to assault Davis. In fact, the evidence shows that after Robinson and Marvin left the scene, Davis and Johnson engaged in a conversation while walking to Davis's car. The conversation continued in the doorway of the car until the time that Marvin and Robinson returned to the scene, at which time, Marvin punched Davis.
 {¶ 27} From the evidence in this record, the trial court could reasonably conclude that no reasonable jury would have failed to find that sufficient time had passed between the incident with the car and the shooting to allow Davis to calm down. "Past incidents * * * do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off." State v. Mack (1998),82 Ohio St.3d 198, 201. Furthermore, the fact that Davis walked over to Robinson, who after the first shot fell to the ground, and proceeded to stand over him and shoot him multiple times, is consistent with Davis having acted deliberately, and is inconsistent with his having acted with sudden passion in shooting Robinson. On this record, we conclude that the evidence does not reasonably support an acquittal on the charged offense of Murder and a conviction for Voluntary Manslaughter. Consequently, the trial court did not err by denying the requested instruction.
 {¶ 28} Davis's Second Assignment of Error is overruled. *Page 9 
 IV {¶ 29} Davis's Third Assignment of Error states:
 {¶ 30} "APPELLANT'S CONVICTIONS FOR THE MURDER OF KENNETH ROBINSON AND FELONIOUS ASSAULT OF KEYANDAY MARVIN WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 31} Davis argues that his convictions must be overturned because they are not supported by the evidence. In support, he contends that the testimony of the eyewitnesses was inconsistent. He further contends that the eyewitness testimony presented by the State was not credible because all of the witnesses were friends of the victims.
 {¶ 32} In conducting a weight-of-the-evidence review, an appellate court must "review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact `clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"State v. Wilson, 2005-Ohio-5004, Montgomery County App. No. 20949,]} 5. When assessing the credibility of conflicting testimony, an appellate court must give substantial deference to the finder of fact, who has seen and heard the witnesses. State v. Lawson (August 22, 1997), Montgomery App. No. 16288.
 {¶ 33} We have reviewed the entire transcript. While we do agree that there are some discrepancies in the sequence of the events and locations of different participants *Page 10 
as related by different witnesses, those discrepancies are not of great significance, and may be explained by the fact that the witnesses were in differing locations in the area at the time of the shootings. Of more importance is the fact that there was consistent testimony from numerous witnesses, and from Marvin, who identified Davis as the shooter. No one else was observed firing a gun. The evidence of multiple witnesses, if believed, is sufficient to support the convictions. On this record, we cannot say that Davis's convictions are against the manifest weight of the evidence. Accordingly, Davis's Third Assignment of Error is overruled.
 V {¶ 34} All of Davis's assignments of error having been overruled, the judgment of the trial court is Affirmed.
 BROGAN, and GRADY, JJ., concur. *Page 1